Our first case of the afternoon, International Brotherhood of Electrical Workers v. City of Springfield, for the appellate, Ms. Fion Simenez, and for the appellate, Mr. O'Hara. You may proceed. May it please the court, counsel, good afternoon. The city is appealing a summary judgment motion where the court actually compelled the city to go to arbitration on this matter. The city believes this issue is not arbitrable, so the city is asking that this be overturned. The issue is actually Diana Malcolm. She was in a non-union position. She got that position on January 12, 2009, and on December 21, 2009, the union first filed a grievance on the issue about an alleged promise that was made by Mr. Renfro. The city would say this office coordinator position that she was in is not covered by the union agreement. Specifically, if you look at the briefs, it says on Article I, Section 3, there are several positions covered by the collective bargaining agreement. Office coordinator is not one of them. I can spell them out. It's cable splicer. I can go through them, but they're also listed in the brief. The next thing is under Article VIII, Section 3, which is the collective bargaining agreement, which is negotiated between both parties, never spells out operations coordinator. Under Article VIII, Section 3, it says that said employee shall have six months probation period to assure that both the employer and the individual have made the right choice. During the six-month period, said employee will be able to return to his former position provided that he is then physically qualified to return to work. She was out of this position from January 12, 2009 until December 21, 2009, and is still in a non-union position. In the brief that the union presented, they said that there is this alleged promise. If I could just touch base on that a little bit. There's nothing. There's no MOU. There's no writings about this alleged promise. There was no intent by the city to have this promise attached to this collective bargaining agreement. In fact, I have no evidence to review of this alleged promise. Therefore, this promise is not part of the agreement. We would still say that Ms. Malcolm, her employment position is not covered by the union agreement. If she had exercised her choice to go back within the six months, would her position be covered by the agreement? Your Honor, if she had followed Article 8, Section 3 and said, you know what, this position is not working out for me, I want to come back to my union position, the city would say, hey, okay, we'll put you back in that union position. And actually, in that specific article, if that position was no longer there, we would have to pay her the same type of salary of that previous union position that she was in. And if you didn't do that, the union could grieve the argument, right? Correct. As long as they fell within that 15-day time period. As soon as they became aware that we weren't creating this position, they have 15 days to bring it up. Can the city be stopped if it encourages the union worker not to file a complaint within the six months? If that had happened, I don't know how we would... she would still be able to raise it under 36.62 as a non-union worker, which is her remedy. It's a sprinkled civil service commission. She could raise all of her wages, hours, conditions of employment to the sprinkled civil service commission. It wouldn't be the union that she would take it to unless she specifically was denied her union position. Did that answer it, Your Honor? This 15-day issue that I just mentioned, Article 2, Section 1 of the Collective Bargaining Agreement states that a grievance for the purposes of this agreement shall be defined to mean a complaint or dispute between the parties as to the issues related to wages, hours, terms, conditions of employment, and established procedures of the parties. Her position is not covered by the Collective Bargaining Agreement. And then, if she had a grievance, she had the steward on a job in a case of grievance shall take up the matter in writing with the immediate supervisor of the department within 15 days of being aware of the grievance or the time the union employee concerned became aware or should have become aware. Okay, so if they're saying that she, just hypothetically, if she was not allowed to come back into this position within six months, she had six months and 15 days to raise that grievance, which my calculations are correct. I'm pregnant, so my memory is a little bit off. I would say that would be from January through July. That would be about the time frame that she would raise, and it would be 15 days from that six-month window if she wasn't getting this alleged salary. Not December 21st. That's an additional five months on top of it. So, and then the other issue I would like to present is under Article 1, Section 3, which I talked about having the list of employees that are covered by the agreement. And I would say it's actually a type of zipper clause because it says, specifically, and that for the purpose of clarification of any clause that may hereafter be in question of interpretation, a statement covering the correct intent of such clause in question shall be covered by both parties and attached hereto and made part of the agreement. There's nothing outside saying, hey, Ms. Malcolm, after six months you're getting $60,000 to be in this non-union position. So, there's nothing attached to this agreement. And arbitration is specifically something that's negotiated by both sides and put in the agreement. Under Article 3, Section 2, an arbitrator shall have no power to amend, modify, nullify, ignore, add to, or subtract from the provisions of this agreement. Is it the city's position that even if the allegations here are true, it's just tough luck for the plaintiff here, Diana Malcolm? Okay. The city's position first is she's not covered by the agreement. Second, though, in the alternative, if you want to say she's covered by the agreement, it wasn't attached to this agreement. There's no MOU. So, basically, tough luck. You should have behooved both parties. So, gee, we promised you $6,000 increase and, you know, too bad. Sorry. Different administration, different times, different things. You may have been promised that, but it doesn't matter. You don't get it. Well, Your Honor, the only issue with that is there would hopefully be some type of writing on both sides. All I have is the union's letter from December 21st, 2009, which was from President David Byrd's state. This is kind of a technical point. I mean, this is the city of Springfield, not the city of Chicago or the state of Illinois with thousands of people. I suspect you probably know if this is true or not, whatever the technicalities are. My question is, assuming it's true, she still loses because, you know, it's just too late and you didn't do this, whatever. Assuming it's true, which I don't have any information, but if that was true, based on Article I, Section 3, they should have attached it to the agreement with an MOU. It would behoove both parties, so it would be clear for both parties to say you have this time frame. It would be within six months, but, I mean, post-six months, you're just out of luck. After six months, you're not covered by the union agreement, unless they wanted to put something together to somehow add it for that particular position of office coordinator. But that's not there. Who was it she claimed promised her this? Mr. Topper, who was a previous general manager of CWLP. He's gone now? Yeah, he's gone. Was he gone at the time her six months came up? No, he just left this January, Your Honor. She's actually still in the employment position of a non-union employment position. So we would first say she's not covered by it. Well, you may have a real good argument as better law, but it just strikes me as kind of bad form. Maybe the city loses style points, but not be making promises and then saying, you know, I hope that that didn't happen. But the thing is, there was no evidentiary finding at the court. But it could have. Yeah, if there was and he did, in fact, it was found that he said that, then we might be not even here. We might be working on a settlement negotiation. But that didn't, as far as I know, I just got in this case, there was nothing of that discussion. But pursuant to Article I, Section 3, I would say that would have to be attached with some type of MOU. You know, it's clear. It's a contract. It's negotiated by both sides. I don't have an office coordinator position in this collective bargaining agreement. Therefore, I don't think she should be covered by the collective bargaining agreement. And one of the other points I wanted to make is that the union uses Illinois Public Relations Act, Section 8, which I do believe covers this agreement. It specifically says the collective bargaining agreement is negotiated between the employer and the exclusive representative shall contain a grievance resolution procedure, which shall apply to the employees in the bargaining unit. The key is she's not an employee in the bargaining unit. And that's what the city would stand on. She was not considered, her position was not within the bargaining agreement. And thus, we don't think we should be compelled to arbitration. I don't have, I know I was allotted 20 minutes, but I don't have it. Does anybody have any more? You never have to apologize for ending an argument today. You get style points. Yeah, style points. Thank you, Your Honor. Thank you. We'll hear from you on rebuttal. Mr. O'Hara? May it please the court, counsel, first of all, let me identify myself. My name is Michael O'Hara. I'm a partner in the law firm of Kavanaugh and O'Hara. Are you the good-looking brother? I saw the other one yesterday. My brother Patrick, who was here yesterday, is not the good-looking twin, yes. And I would want to make clear that despite the fact that opposing counsel is with child, I think she still only gets 20 minutes. I represent IBEW Local 193, and we don't believe this is a difficult case. We would indicate that the circuit court's order is prismatic in the rationale and reasoning that it utilized to find summary judgment for the union because every maxim with respect to pointing toward the arbitrability of this issue points toward granting the union's motion for summary judgment. First of all, it comes under the Illinois Labor Relations Act, and as this court well knows, under 5 Illinois Compile Statutes 315, Section 8, a collective bargaining agreement negotiated between a public employer and a certified exclusive bargaining representative has to have a grievance arbitration procedure. But this employee was outside the unit. Pardon? This employee was outside the unit. Well, Your Honor, if I could address that quickly. This Article 8, Section 3, I would concede is an unusual provision. I've literally seen thousands of collective bargaining agreements, and this is a provision which indicates that the employer can take a bargaining unit position individual and replace them in a non-bargaining unit position for six months. And during that six months, either the employer or the union or the employee can decide whether they're comfortable with that particular position and decide they don't like it and opt out. Now, you asked the question of counsel, what if in fact the city didn't do that, could the person grieve it, could the union grieve it? And the answer is clearly yes. If in fact the city failed to abide by the desire of that individual to opt back into the bargaining unit, certainly the grievance procedure would support that particular. But the agreement contains a six-month clause and a 15-day clause? Your Honor, that six months is an indication of when in fact a decision could be made by the employee. It's not a statute of limitations type of time frame. Indeed, collective bargaining agreements, whether it's a grievance procedure or many other provisions, have time limits that arbitrators often skew, determining that in fact the parties have acted in a particular way to skew those particular rights. Indeed, I cited a point of query in my arbitration brief that indicates that if time frames are set forth in collective bargaining agreements, arbitrators find it an anathema to interpret those so as to forfeit a grievance, so as not to get to the substantive issue with respect to a grievance. Here, if you take a look at the six months, it only indicates that after that six months, if the employer still wants to opt the employee back into a position, if it's not available, they still have to pay the union rate. We would indicate that in fact here the affidavit of Mr. Burns, who was the union representative who indicates he had the agreement with the city, was induced not to file the grievance. That's the whole issue. Whether in fact there was a promise that in fact this was going to happen, you just have to hold on, you don't have to file a grievance, this is going to occur. And if in fact that can't be proven at arbitration, if in fact an arbitrator doesn't believe it, we lose. But in fact, that's the type of issue that happens all the time with respect to, for instance, the timeliness of grievances. If a union fails to file a grievance in time and within three days, or mails it late, or fails to have an employee sign it, and the collective bargaining agreement says a grievance has got to be signed. Those are the type of issues that arbitrators decide all the time as far as procedural arbitrability. And the courts have always said, if in fact there's a doubt as to arbitrability, then indeed the arbitrator should decide arbitration. How can there be a doubt? Isn't it true the collective bargaining agreement only applies to employees within the collective bargaining unit? I would agree with you, Your Honor, if in fact the city didn't put this particular provision, which meshes the concept of non-bargaining unit and bargaining unit positions together. The city obviously put this provision in so that it could take bargaining unit positions and place them into non-bargaining unit positions and try them out for probationary periods to determine if in fact they wanted them in a non-probationary, I mean a non-bargaining unit position. Are you saying she didn't move from one job to another, they just changed the title? She did do that. But when she got to that position, she would have opted out, but for the inducement of the city saying, you don't have to do that, you don't have to file a grievance, or you don't have to request to opt back out, we're going to abide by the agreement. The general rule is that the stopple doesn't apply against the city. The city cannot be stopped by the actions of its employees. Well I think it can, Your Honor, I think indeed it can. I think an arbitrator could rule that this particular case, that a city can't utilize a promise that it's going to abide by an agreement, and then say, oh by the way, we're going to renege on the agreement, therefore you're too late to file a grievance. For instance, if I could, if in fact the affidavit which was set forth in the summary judgment says that in fact, Mr. Renfrow says, you don't have to file a grievance, we're going to abide by the restrictions, just hold on, it's taking us longer than we thought it would with respect to this matter. And then two months, three months later it says, forget it, we don't have an agreement, too bad, you can't file, you don't have any remedy. The only remedy you now have is, Ms. Malcolm, you're stuck in a non-bargaining position, and you no longer have the protection of the union. She originally had the protection of the union, and it was the employer, pursuant to the collective bargaining, that put her in a non-bargaining unit position, and she was there for six months. And the union says, we were there and we had an agreement, and despite that we said, we only want it for six months, but then the city says, don't worry about it, everything's okay, and then changed its mind. And because it changed its mind, we believe that in fact, the city would be stopped. Why did she wait 11 months after she was in the position to file her agreement? Pardon me? Why did she wait 11 months after she was in the position before she filed her agreement? Because there was numerous correspondence going back and forth, demanding that let's get this moving, let's get this agreement going, and for some reason the city and the union just sat on it. They didn't move. Nobody did anything. Now the question is, is whether that's reasonable, and certainly an arbitrator can rule, well, maybe you sat on it too long, that 11 months is too late. But I would indicate that normally, arbitrators, as I've indicated, in L4 and L4, how arbitration works, has indicated time and time again, that timeframes set forth in collective bargaining agreements are often skewed by the parties, especially by a party that attempts to utilize a timeframe in which to exercise, to be able to work a forfeiture of agreements, whether it's by a late filing of agreements or not having somebody cite a particular provision of a collective bargaining agreement when the collective bargaining agreement requires it, or if the collective bargaining agreement says that the employee has to sign the grievance and it isn't signed. And oftentimes the arbitrator says, you didn't adhere to the collective bargaining agreement, but that may be a violation, but it doesn't allow you to forfeit the grievance so that you get a substantive ruling. Indeed, if in fact the union is unable to prove that the city falsely made this promise, reneged on the promise, that indicated, extended it out past the six months that there was an agreement, we lose. And it's not simply... What I hear you saying here is that arbitrators often ignore the language of the agreement, and therefore we should defer to the decision of the arbitrator because the arbitrators often ignore the language of the agreement. Of course, time and time again, the Supreme Court says, in doubtful cases, if it's doubtful whether it's arbitrable, the arbitrator should decide arbitrability. And if I could read this, it's on page 14 of my brief, this is what a court of court says. It has been held that doubts as to the interpretation of contractual time limits or as to whether they have been met should be resolved against forfeiture of the right to process the grievance. Moreover, even if time limits are clear, late finding will not result in dismissal of the grievance if the circumstances are such that it would be unreasonable to require strict compliance with the time limits specified by the agreement. And it cites a plethora of arbitration cases standing for that proposition. Indeed, this happens all the time in collective bargaining when, in fact, employers utilize methods whereby time frames are skewed and, therefore, the time frames are missed and then all of a sudden they say you can't proceed with the arbitration because you didn't follow the strict procedures of the collective bargaining agreement. Here, Your Honor, I would indicate, one, that the grievance definition is very broadly defined. It's not narrow. It's very broadly defined. Two, as I pointed out, in the city of Rockford there's an indication that unless there is a specific agreement between the party to a collective bargaining agreement that parties agree to exclude a particular issue from arbitration, it should be arbitrated. That is, reversing the presumption that normally takes place in arbitration. And I was interested there on your second point. The union and the city never agreed to exclude the issue of the Malcolm grievance. Did they have to specifically refer to the Malcolm grievance? Well, I don't think they would have to specifically refer to the Malcolm grievance, but the grievance, the type of grievance, I believe. I would indicate that when, in fact, the city includes in a collective bargaining agreement an unusual provision such as this that literally mentions and meshes the concept of a bargaining unit position with a non-bargaining unit position and allows the city to take a non-bargaining unit, I'm sorry, a bargaining unit position and make it a non-bargaining unit position and then allows both the union and the employer and or the employee to opt out of that situation for a particular time period that if one of the parties makes some promises and skews that time frame that that party shouldn't be rewarded by saying they get to invoke that particular time frame. So that's the whole basis of this case, Establo. Yes. Establo in the sense that when, in fact, a party is induced literally not to abide by a particular time frame and then the other party attempts to use this literally as a statute of limitations when it wasn't ever intended to be a statute of limitations. In fact, if a strict reading of Article 8, Section 3 the six months wasn't ever even intended to be a statute of limitations. It was only intended to be the time frame in which the party couldn't him or herself or herself opt back in. You plead and argue equitable Establo at the trial level? Pardon me? Did you plead and argue equitable Establo at the trial level? Orally I think the issue of Establo was brought up. In other words, it was part of the argument that in fact the employer shouldn't be allowed to use Establo. Shouldn't equitable Establo be specifically alleged and adjudicated as opposed to just kind of matter of musings? Well, I don't know how to say it, Your Honor, other than to say that the summary judgment was premised on the fact that we allege that the city affirmably induced the union to bypass the six months and when as soon as we found out that the city was denying that an agreement exists agreements was immediately filed. Equitable Establo is a identified and particularized doctrine of law that ought to be briefed, argued, pled, and when a trial judge should make findings on it? Again, Your Honor, this was a case that was a petition to compel arbitration and we cited the preference for arbitration. But in response to their claim that, I'm sorry, you're not timely, wouldn't that be appropriate for you at the trial level to have pleaded and argued and cited the whole Equitable Establo is your theory? I said, hey, you can't be arguing this because you're stopped and here's why. And we argued, Your Honor, that in fact we were induced to not abide by the six months and we said that's not a statute of limitations, that in fact we were timely under the circumstances. And the trial court said, hey, when in fact the courts say that unless you have a specific agreement to exclude a particular man from arbitration, when arbitration is favored method for resolving labor disputes, when you have a broad definition of grievance, when you have no zipper clause that says this isn't the entire agreement, when you have a provision that specifically says that if there's a dispute other than discipline that the exclusive remedy with respect to the how you resolve dispute is the grievance arbitration procedure, we cited all that. We thought we were pretty thorough in citing the basis for the support that indeed this is a matter for the arbitrator to decide. We believe that this is a fairly straightforward procedural arbitrability issue that an arbitrator would decide before he decides the substantive matter. Generally speaking that's what happens. You go to the arbitrator and say there's an issue about procedural arbitrability. The city's arguing that this doesn't belong before you because of this. He or she decides that. Sometimes they go back and have the parties present the substantive evidence. The fact remains we believe that in this instance there is no reason to bar this grievance when in fact what the union is seeking literally is the remedy of Article 8 Section 3 that is for Diane Malcolm to go back to her original position under the collective bargaining agreement which she enjoyed before the employer affirmatively took her out of the bargaining unit. Indeed that's what the clause indicates. And again I will indicate that it's an unusual clause because it does mention bargaining unit and non-bargaining unit positions and usually collective bargaining agreements do not broach the subject of non-bargaining unit positions. But here it does and allows the employer to do something affirmative with a bargaining unit position. But when in fact it does state that there are some  unit positions that were eventually broken, we believe that the arbitrator should hear the substantive issue of this particular matter. Thank you. Thank you counsel. Rebuttal? I believe that there's a couple different issues that counsel has touched on. First of all, whether or not Ms. Malcolm was a member. If we believe, the city believes that she's not a member of the collective bargaining agreement, so therefore there was no need to do an exclusive documentation that she was not able to be covered by this agreement. She wasn't covered. That position was not covered. And then the other issue is in regards to time frame, this 15-day window and this alleged inducement. How about the estoppel argument? Are you bound by estoppel? First of all. If you've induced the employee to delay past the six months, isn't that improper? Your Honor, first of all, if that did happen, we have  documentation. There's not been any evidence of correspondence from the city in regards to this promise. Were you trial counsel here? No, Your Honor. He's no longer at the city. Okay. Well, I asked Mr. Herr about this. Was the equitable estoppel argument at the trial level in this case? Your Honor, the only thing I have on this case is actually the pleadings and based on the pleadings, I don't see that that was ever argued because I don't have the counsel at the city anymore. However, that was not in any pleadings that I've read. But also there was nothing in the record that the city had corresponded to induce this individual not to raise this grievance until after the six months or beyond a 15-day window when she became aware she wasn't getting this extra $60,000. Actually, I'd like to bring you to Article 8, Section 3, which is cited in my brief, too, but it says, Any member of the bargaining unit who is placed by the employer in a position covered by the City Personnel Code and Civil Service Commission, but not covered under this agreement, shall continue to acquire seniority rights as long as they are employed by the Office of Public Utilities. They may not use their seniority rights to bid on any job opening under this agreement while in a position not covered by this agreement. Then the next part is very important. It says, Said employee shall have six months probation period to assure that both the employer and the individual have made the right choice. So it's not just the employee says, Hey, I don't like this job. I want to go back in six months. The employer can also say, Hey, we don't need her in this position. It's not working out. We can send you back. That didn't happen here. She's still in the position. We don't have that here. There's nothing. I have nothing that there was an agreement on the city that this position would be covered by the collective bargaining agreement. Therefore, the city would ask that you overturn the court's ruling. Thank you. Thank you, counsel. I take the